THE FARMERS AND MECHANICS BANK v. ENOCH W. GREEN.

. A firm in the country was dissolved in 1849, and no notice of dissolution given. In 1860, one of the partners drew a note, and signed to it the name of the firm without the knowledge or consent of the other partner, and such paper was discounted by a bank in Philadelphia without inquiry. *Held,* that such note was not binding on the firm.

This suit was brought by the plaintiff to recover the amount of a promissory note for $409.21, with interest. The issue was tried at the Mercer Circuit, and a verdict rendered for defendant. A rule was granted to show cause why the verdict should not be set aside. The facts of the case are fully shown in the opinion of the court.

For the plaintiff, *M. Beasley.*

For the defendant, *F. Kingman.*

VREDENBURGH, J. This was an action brought by the bank against the defendant, as one of the drawers of a promissory note, of which the following is a copy:

$409.21. GREENSBURGH, N. J., June 27, 1860.

Five months after date, we promise to pay to the order of Green, Brother & Cooper, four hundred and nine $\frac{21}{100}$ dollars, without defalcation. Value received.

Payable at Philadelphia, at 118 Walnut st.

ENOCH W. GREEN & Co.

Endorsed Green, Brother & Cooper.

It was proved, at the trial, that this note was discounted by the plaintiff in the regular course of its business.

The defence set up was, that at the date of the note there was not, and had not been for several years, such a firm as that of Enoch W. Green & Co.; that the note was made by Philip Green, who drew it, and signed thereto the name of Enoch W. Green & Co. without the knowledge or consent of the defendant, procured the note to be discounted, and appropriated the proceeds to his own use. It appeared in evidence that Philip Green and Enoch W. Green were brothers, and that Philip died the 29th of October, 1860.

I think the jury were warranted by the evidence in finding the following facts:

1st. That at the giving of the note there was no such firm in existence as Enoch W. Green & Co.

2d. That the note in question never was drawn or signed by Enoch W. Green, or with his knowledge or procurement.

3d. That the note was made and signed by Philip Green, for his own use, and so appropriated without the knowledge or consent of the defendant.

4th. That if any such firm as Enoch W. Green & Co. ever existed, it was dissolved so early as 1849.

5th. That no business had ever been done between the plaintiffs and the firm of Enoch W. Green & Co, prior to the dissolution as aforesaid.

No notice of the dissolution was given. But the jury may

have gone upon a another ground, *viz.* that although the plaintiffs may never have had any notice of dissolution of the old firm of E. W. Green & Co., yet that if, after the actual dissolution of the old firm, the plaintiff, as a new customer, saw fit to come in and deal with one of the partners, as if the old firm was still in existence, without inquiry, that he did so at his own peril.

It is a principle of law, that if a retiring partner gives no notice, then a customer of the firm accustomed to trade with the firm on the responsibility of all the partners, not knowing of the retirement, may hold such retiring partner for a debt contracted with the firm after the retirement. *But a new customer generally cannot.* 1 *Par. on Contracts* 145. This raises two questions.

1st. Had the jury a legal right to conclude, from the evidence, that the plaintiff had ever dealt with the old firm of E. W. Green & Co. prior to the dissolution?

2d. If the plaintiff had not so dealt, is there anything in this case to take it outside of the general rule?

This first leads to an examination of the evidence upon the following questions:

1st. What is the evidence upon the question, whether there was any such partnership at all as that of E. W. Green & Co.?

2d. If there was, when did it commence and when did it end?

3d. When did the plaintiff commence to deal as if with the firm of E. W. Green & Co.?

4th. What circumstances are there, if any, which would take this case out of the general rule of law, which prohibits a new customer from holding a firm responsible for an act of one of the partners, after dissolution without notice?

First, as to the proof that there ever was such a partnership at all as that of E. W. Green & Co.

The only act ever proved to have been done by E. W. Green from which a partnership could be inferred, as against him, is that, in 1843, he wrote the name Enoch W. Green & Co. in the signature book of the Trenton Banking Company.

The proof is that Enoch W. Green never bought or sold an article for or in the store, was never there in any other capacity than as an ordinary customer, never drew or paid a note, was never consulted about anything. He was in every other respect, except as to this signature in the bank, an utter stranger to the whole business.

There is one other fact, not an act, so far as the proof goes, of E. W. Green, that a sign lettered Enoch W. Green & Co. was put upon a bridge belonging to Philip Green for some time. But the evidence is, that he protested against its being so up. He always protested he was no partner. Philip always averred he was no partner. Philip did all the business, and took all the proceeds. There is not the slightest proof that Enoch ever received or claimed a cent from the firm in any shape whatever. There is no evidence that the plaintiff ever knew of this signature in the bank. This alleged store was a small shanty in the country, on the canal near Trenton, having in it from $100 to $250 worth of the two great staples in trade, rum and tobacco, while the store of Green, Brother & Cooper was a large concern, at 118 Walnut street, Philadelphia, and the plaintiff one of the largest banks in the city of Philadelphia.

Can we say that the jury could not legally conclude, from these facts, that there never had been any such partnership at all as that of E. W. Green & Co.? Might not the jury legally conclude, that inasmuch as the defendant received no part of the profits, and meddled in no way with the concern, that the signature in the bank was only to give his brother Philip credit in that particular bank, which would make the defendant liable in that bank as a partner; but which other banks, acting without any knowledge of such signature, would have no right to use as proof of partnership as between him and them? And as regards the sign, there is no evidence that it was put up by Enoch, or even assented to by him; it was not put on his building, or on a store containing any goods he claimed to be interested in, but put upon Philip's building, and in the goods in which he, Philip,

claimed to be sole owner. The evidence is, that Enoch protested against it, until he finally prevailed with his brother Philip to take it down. Now had not the jury the right to infer that the sign was put up and kept up without Enoch's consent, and therefore legally conclude that there never was any partnership at all? Now it might be that the signature of E. W. Green & Co. and the sign, might make Enoch liable to third persons, if they discounted this note on the faith of these acts, even if Enoch and Philip were not partners in this alleged firm of E. W. Green & Co.; but then it should appear that they discounted this note by reason of their knowledge of this signature in the bank and the sign, and were deceived thereby. But here there is no such evidence. So that, so far as regards the plaintiff here, the jury had a right to infer from the evidence—first, that there was in fact no partnership; and second, that Enoch W. Green had done, or permitted nothing to be done, which induced the plaintiff to give credit to this paper in the name of E. W. Green & Co. Indeed the weight of the evidence appears to me decidedly—first, that Enoch W. Green and his brother Philip were not in fact in partnership, and that Enoch did nothing which induced the plaintiff to give credit to this paper which was issued in its name.

But suppose we are wrong upon this point, and that it was not permissible for the jury to draw such inferences from the evidence. The next inquiry is, when did this partnership commence, and when did it end? If it commenced at all, it must have been in 1843, when Enoch gave his signature to the Trenton Bank. When had the jury a legal right to infer that it ended? Mr. Cooper, the main witness of the plaintiff says, the store at Greensburgh was closed up in the latter part of 1849, but the account is carried to 1853, because the old debts were paid after the store was closed. Mr. Vannoy says he was in the employ of Green, Brother & Cooper, and in 1849 went up to Greensburgh, and packed up the goods in the store in two small boxes, and sent them to Philadelphia. In the two boxes were about $50 to $75 worth of goods,

having first sold about $70 out of the store to the neighbors. Then a man by the name of Hill carried on business there for his own account. Philip said the whole of the goods belonged to him. There was sold and unsold only about $150 in rum and tobacco, &c., and every dollar of this was taken by Philip, as well as such property as there was, and the store closed up. I think the jury was not only justified, but forced by the evidence to conclude, that if any such firm as Enoch W. Green & Co. ever existed, it was finally closed by Philip's taking all the goods under a claim of right, and closing the store in 1849. The evidence shows most conclusively that Enoch never afterwards interfered in any way in the matter, except when he heard of Philip's using his name to notes in Philadelphia, to forbid it, and to try to persuade Philip to take the sign down. The sign he did get down in 1857, but Philip, against the protestations of Enoch, secretly used his name to notes in New York and Philadelphia for his own private purposes until he died, in 1860, and the fraud was exposed.

Now when did the plaintiff first commence to deal with this alleged firm, E. W. Green & Co.? The evidence of Mr. Cooper is, that the bank had been in the habit of discounting similar papers for the large concern of Green, Brother & Cooper, in Philadelphia, from eight to twelve years—taking the longest time named, twelve years. This would make the commencement in 1850, which was a year after the dissolution, and while the store at Greensburgh was entirely closed, or Hill doing business there for himself. But Vannoy says, and the jury had a right to believe him, that he was in the employ of Green, Brother & Cooper from 1849 to 1852, and that no paper signed E. W. Green & Co. was discounted at the plaintiff's bank. So that the jury was justified in concluding that the plaintiff did not discount any of this paper signed E. W. Green & Co. until 1852. Now how stand the facts? E. W. Green, if he ever was in it, retired from the firm in 1849; the plaintiff, who never dealt with the firm during its actual existence, three years after its dis-

solution, discount, in Philadelphia, for Green, Brother & Cooper, paper which had been fraudulently made by Philip Green, signed in the name of E. W. Green & Co., and continue to do so until it discounted the note in question, in June, 1860, eleven years after the dissolution, and that without inquiry. Under such circumstances, the defendant is not liable. The plaintiff being a new customer of the firm, ought not to have taken for granted the existence of the firm. The inquiry should have been, not if any such firm had ever existed, but whether it was at the first credit an existing thing. Otherwise how is a retiring partner ever to be protected against the fraudulent acts of his copartners? This case itself is a good illustration of its effects. Here, for eleven years after the smallest kind of a country apology for a store had been closed up, every particle of goods taken to Philadelphia by the partner, then that partner fraudulently, without the knowledge or consent of the retiring partner, manufactures paper with his name, to the amount of thousands of dollars, to be shaved in New York and Philadelphia, or any distant point from the place where the apology for a store was pretended to be kept.

When a partner retires there is sense and safety in requiring him to notify the old customers, for he is presumed to know who they are. But how is he to know or notify new customers? How is he to notify all who, in every place, however distant, and at any future distance of time, may see fit to take without inquiry the fraudulent paper made by other members of the firm? For what we know to the contrary, this bank came into existence after the dissolution, and notice consequently impossible.

It is true a retiring partner may so act as to cause the new customer to be misled and to give credit; but then he becomes responsible by such acts, if they actually induced the credit. There is no pretence of any such act here. The bank did not know E. W. Green.

The paper was in fact discounted on the credit of the firm in Philadelphia. The bank was not induced to discount the

paper by any act of Enoch W. Green, or at least the jury were justified in concluding, from the evidence, that it was not. The only fact that could ever so little look that way was, that the sign of E. W. Green & Co. remained until 1857. But this was three years before this note was discounted; and even if it had not been down at all, there is no evidence that the plaintiff knew or had ever heard it was up, and therefore could not have given the credit on that account; or, if known, would it have justified a bank in Philadelphia in dealing with E. W. Green & Co., as a firm, upon the bare information that an old sign had once been up, upon a small shanty in the country?

I think the jury were not only justified in concluding, but were bound by the evidence to conclude, that when this paper was given, there was in fact no such partnership as that of E. W. Green & Co., and that the defendant had done nothing which justified the plaintiff in either trusting or holding him as a partner, and that the rule should be discharged.

Rule discharged.